UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SANDRA MITCHELL, OBO,** <br> **SHELLEY B. LEJEUNE** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 22-3619** |
| **KILOLO KIJAKAZI,** <br> **ACTING COMMISIONER OF SOCIAL** <br> **SECURITY** | **SECTION: "L" (4)** |

**REPORT AND RECOMMENDATION**

This is an action for judicial review of a final decision of the Commissioner of Social Security, pursuant to Title 42 United States Code § 405(g). The Commissioner denied Plaintiff's, Sandra Mitchell (:"Mitchell") OBO, Shelley B. LeJeune ("LeJeune") eligibility for Disability Insurance Benefits ("DIB") under the Title II of the Social Security Act, 42 U.S.C. § 423 and Supplemental Security Income ("SSI").

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b), for the submission of Proposed Findings and Recommendations.

**I.   Background**

Ms. LeJeune, born in June 1968, was forty-seven years old and considered a younger individual on her alleged onset date of December 30, 2015. R. Doc. 11, Tr. 290, 312; *see* 20 C.F.R. §§ 404.1563 (c), 416.963(c). In June 2018, Ms. LeJeune turned fifty years old and was considered an individual closely approaching advanced age through her date of death. 20 C.F.R. §§ 404.1563(d), 416.963(d). She had a high school education and had worked as a waitress and an assistant manager. R. Doc. 11, Tr. 312. Ms. LeJeune alleged disability due to depression, seizures, problems with discs in neck/back, mental issues, pelvic floor dysfunction, headaches, bilateral carpal tunnel syndrome, post-traumatic stress disorder, and interstitial cystitis. *Id.* Tr.

311.

Ms. LeJeune applied for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") alleging disability since December 30, 2015. R. Doc. 11-3, Tr. 65. Ms. LeJeune passed away from an accidental drug overdose on November 18, 2020, and Ms. Mitchell, her mother and representative, was allowed to pursue the claim on LeJeune's behalf. R. Doc. 11-4, Tr. 170.

On December 9, 2021, the ALJ conducted a hearing and issued a decision on March 14, 2022. R. Doc. 11-2, Tr. 38-63; *id.* at 12-35. On August 11, 2022, the Appeals Council denied the claim. *Id.* at 1-4. The Appeals Council denied the request for review. *Id.* at 1-6. Plaintiff now seeks judicial review of the ALJ's decision under 42 U.S.C. § 405(g). *See* R. Doc. 1.

The ALJ found that Lejeune met the insured status requirements of the SSA through December 31, 2020. R. Doc. 11-2, Tr. 18 (Finding 1). The ALJ further held that LeJeune had not engaged in substantial gainful activity since the alleged onset date of December 30, 2015. *Id.* at 18 (Finding 2). The ALJ found that LeJeune had chronic interstitial cystitis with frequency and urgency incontinence, cancer of the kidney status-post partial nephrectomy, degenerative disc disease and arthropathy of cervical and lumbar spine, carpel tunnel syndrome and degenerative changes to right wrist, epilepsy, depression, anxiety and post-traumatic stress disorder, severe impairments. *Id.* (Finding 3). The ALJ further noted that beginning on July 20, 2020, the established disability onset date, the claimant had the same impairments. *Id.*

The ALJ found that Lejeune had no impairment or combination of impairments that met or medically equals the severity of one of the listed impairments. *Id.* (Finding 4). The ALJ found that prior to July 20, 2020, Lejeune had the residual functional capacity to perform light work as defined except for (1) frequent climbing, stooping, kneeling, crouching, crawling; (2)

frequent reaching over head bilaterally; and (3) frequent handling with the dominant right upper extremity. *Id.* at 20 (Finding 5). The ALJ found that Lejeune must avoid workplace hazards such as unprotected heights and dangerous moving machinery, and can understand, remember, and apply simple routine instructions. *Id.* The ALJ found that Lejeune was limited to work primarily involving things rather than people, must avoid fast-paced, quota-based work, and can adjust to occasional changes in work setting or routine. *Id.* The ALJ further held that Lejeune would be off task on average 15% of the workday in addition to normal work breaks. *Id.*

The ALJ thereafter found that Lejeune was unable to perform her past relevant work since the alleged onset date. *Id.* at 24 (Finding 7). He noted that she was 52 years of age, closely approaching advanced age and that she had not been able to transfer job skills to other occupation. *Id.* at 25 (Findings 8, 9, 10). The ALJ further held that before July 20, 2020, given her age, education, work experience and residual functional capacity, there were significant jobs such as a price marker, routing clerk, and housekeeper, in the national economy that she could have performed. *Id.*

However, beginning on July 20, 2020, given her age, education, work experience and residual functional capacity, there were no jobs that exist in significant numbers in the national economy that Lejeune could perform. *Id.* at 26 (Finding 12). Finally, the ALJ found that Lejeune was not disabled before July 20, 2020 but became disabled on that date and remained disabled through the date of the decision. *Id.* at 26 (Finding 13). The ALJ also determined that Lejeune's substance use disorder was not a contributing factor material to the determination of disability since she accidently overdosed on medications that were prescribed to her. *Id.* (Finding 14).

Mitchell advances four reasons why the ALJ's opinion is not based on substantial

evidence. First, Mitchell contends that the ALJ misapplied Agency policy regarding the established onset date. R. Doc. 12 at 2. Second, Mitchell contends that the ALJ failed to properly develop the record by never even attempting to enforce the subpoena for records held by Lejeune's treating mental health provider. *Id.* at 6. Third, Mitchell contends that the ALJ failed to perform any assessment of Lejeune's reported symptoms or those reported by her mother. *Id.* at 11. Fourth, Mitchell contends that the ALJ's residual functional capacity failed to account for any functional limitations related to Lejeune's interstitial cystitis which the ALJ concluded was severe medically determinable impairment. *Id.* at 16.

The Commissioner contends that substantial evidence supports the ALJ's determination that Lejeune was not disabled prior to July 20, 2020, but became disabled on that date. R. Doc. 13 at 4-5. The Commissioner further contends that the record was sufficiently developed and that the ALJ properly assessed Lejeune's and Mitchell's statements. *Id.* at 5-8. Finally, the Commissioner contends further that the ALJ fully considered Lejeune's interstitial cystitis. *Id.* at 8-9.

**II.     Standard of Review**

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). However, an ALJ's failure to apply the correct legal test constitutes a ground for reversal.

*Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d, 552, 555 (5th Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found where there is only a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Franklin v. Soc. Sec. Admin.*, No. 12-2681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3rd Cir. 1983)).

### III. Analysis

#### A. Application of Agency Policy-Onset Date

Mitchell contends that the ALJ erred in identifying LeJeune's disability onset date. Mitchell contends that the ALJ arbitrarily selected the consultative examination date as the disability onset date rather than look at the evidence to determine the onset date. R. Doc. 12. Therefore, Mitchell contends that the established onset date was based on legal error requiring a remand and that her alleged onset date was December 30, 2015. *See* R. Doc. 11-3, Tr. 65. Mitchell contends that her testimony regarding her daughter's condition was significant beginning in 2015 and that the ALJ did not explain how her testimony was controverted. R. Doc. 12 at 17.

The Commissioner contends that the ALJ reasonably concluded LeJeune's established disability as of July 20, 2020. The Commissioner contends that the ALJ properly determined that the disability onset based on the findings during the consultative examination and that earlier medical records did not support an earlier onset date.

The purpose of Social Security Ruling 18-01p ("SSR 18-01p") is to explain what the SSA means by the onset date and to clarify how the SSA determines the onset date for disability claims. The established onset date is defined as "the earliest date that the claimant meets both the definition of disability and the non-medical requirements during the period covered by his or her application." SSR 18-01p, 2018 WL 4945639, at *2. "It is easy to assign a date of onset to disability caused by a congenital defect or traumatic injury, but chronic, progressive diseases require a great deal more inquiry." *Gray v. Apfel*, 191 F.3d 447 (Table), 1999 WL 710362 at *1 (4th Cir. 1999).

SSR 18-01p provides the ALJ several options to determine the first date on which the claimant became disabled when the record is insufficient. First, "[i]f there is information in the claim(s) file that suggests that additional medical evidence relevant to the period at issue is available," the ALJ "will assist with developing the record and may request existing evidence directly from a medical source or entity that maintains the evidence." SSR 18-01p, 2018 WL 4945639, at *6.

Second, if additional medical evidence does not exist, the ALJ "may consider evidence from other non-medical sources such as the claimant's family, friends, or former employers." *Id*. Finally, the ALJ "may call on the services of a [medical expert]." *Id*. However, the decision to call on the services of a medical expert to assist in inferring the date that the claimant first met the statutory definition of disability "is always at the ALJ's discretion," and "[n]either the

claimant nor his or her representative can require" the ALJ to do so. *Id.*

The ALJ noted that LeJeune claimed that her alleged disability began on December 30, 2015. R. Doc. 11-2, Tr. 15. The ALJ found that LeJeune had not engaged in substantial gainful activity since the alleged onset date of December 30, 2015. *Id.* at 18 (Finding 2). The ALJ determined that the disability onset date was July 20, 2020. *Id.* at 26 (Finding 13). The disability onset date according to the ALJ was determined based on the evaluation by Dr. Manucia, PhD, a consultative examiner. Dr. Manucia found that LeJeune appeared in a "confused manner, alternating between present and absorbed with tears and grief." *Id.* She noted that LeJeune's "thought processes were goal directed but her speech was slowed and largely passive," and had difficulty discerning "whether she was still considering the question or if she was falling asleep." *Id.*

Dr. Manucia indicated that LeJeune's speech was not pressured, but her verbal expressive skills were barely adequate for simple conversation, that she was tearful, and she was not able to perform her best on any cognitive task. *Id.* Dr. Manucia found that LeJeune had moderate-to-significant difficulty remembering and following multi-step verbal directions, an inability to adapt to the stress a demands of an ordinary work environment, and "inconsolable," although she was noted as apparently medicated. *Id.* The ALJ noted Dr. Manucia's finding that LeJeune requires reminders and assistance to meet basic daily needs and is not able to manage money in her best interest. *Id.*

The ALJ also noted Dr. Manucia's notation of LeJeune's statement that she believed that she could not leave her house or drive. *Id.* Based upon this deterioration, Dr. Manucia concluded that LeJeune exhibited marked limitations in concentration, persistence or pace, and would be off task on average 15% of the workday in addition to normal work breaks. *Id.*

The ALJ concluded that subsequent medical evidence of record supported the limitation. *Id.* at 24. The ALJ also noted that on the day of the evaluation, LeJeune was admitted for accidental drug overdose. *Id.* The ALJ noted that LeJeune was sedated secondary to prescription medication (barbiturates, benzodiazepines, and opiates) for chronic pain. *Id.*

The ALJ further detailed Ms. Mitchell's testimony where she explained that during Christmas 2015, her daughter was like a zombie. *Id.* at. 21. He chronicled in great detail Ms. Mitchell's testimony, but he concluded that LeJeune's impairments could be reasonably expected to cause her symptoms. *Id.*

However, the ALJ also found that some of her statements regarding the intensity persistence and limiting effects of the symptoms were not fully supported before the established onset date. *Id.* The ALJ detailed Lejeune's medical history beginning in October 2018. *Id.* at 21-22. After detailing her medicals, the ALJ found that while the record confirms that LeJeune was extensively evaluated and treated for her symptoms and took several medications, he noted the objective clinical and laboratory diagnostic findings reported by her own sources do not support the limitations that preclude the range of light exertion called for in the residual functional capacity. *Id.* at. 22.

The record shows that LeJeune was diagnosed with chronic interstitial cystitis on October 11, 2018. R. Doc. 11-7, Tr. 816. While Mitchell testified that LeJeune was a shell of a person (*see* R. Doc. 12 at 5), the record supports the ALJ's finding that the limitations were not as severe as her mother testified. For example, the medical records indicate that LeJeune had normal psychomotor activity, normal speech, good mood, appropriate affect, and logical and coherent thought process. *Id.* at Tr. 804, 807, 821, 836, 935, 991, 1020, 1026, 1286, 1288, 1300, 1305, 1313, 1315. The record also shows that LeJeune had normal memory, intact critical

judgment, true emotional insight, and that she was alert, oriented, cooperative and able to resist impulses. *Id.* Therefore, the ALJ's finding that LeJeune's deterioration deteriorated by July 20, 2020, but not earlier, is supported by the evidence. The Court further notes that other than LeJeune mothers' testimony, Ms. Mitchell fails to point to any record evidence that supports her testimony.

### B. Failed to Properly Develop Record by Enforcing Subpoena for Mental Health Records

Mitchell contends that the ALJ made no effort to enforce the subpoena he had issued for the mental health records from Jubilee Counseling Service ("Jubilee"). R. Doc. 12 at 7. Mitchell also contends that while the ALJ acknowledged that the record was deficient, he issued a decision anyway. *Id.* She further contends that there is little evidence illustrating the steps taken by the ALJ to secure the mental health records of LeJeune, which her representative also had difficulty securing. *Id.* at 8.

The Commissioner contends that the ALJ was first informed about Jubilee's refusal to release LeJeune's medical records and gave LeJeune's representative time to submit a subpoena by the end of the day. The Commissioner contends that it was LeJeune's representative who was not able to comply with the deadline due to COVID-19 and Hurricane Ida, and that Jubilee told her that Jubilee indicated they hoped to send her records the following week. The Commissioner contends that contrary to LeJeune's representative statement, additional records were not received, and the report was issued over a month later.

The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. *Ripley v. Chater*, 67 F.3d 532, 557 (5th Cir. 1995) (citation omitted). If the ALJ does not satisfy his duty, his decision is not substantially justified. *Id.* Reversal of his

9

decision, however, is appropriate only if the applicant shows that he was prejudiced. *Id.* The regulations "clearly explain that the burden to obtain information is on the claimant." *Winston v. Commissioner, Social Sec. Admin.*, No. 07-134, 2008 WL 4412233, at *7 (E.D. Tex. Sept. 23, 2008) (citations omitted).

However, the burden to "demonstrate a disability is always on the claimant." *Id.* "If the claimant does not provide sufficient evidence, the ALJ must make a decision based on the available evidence." *Id.*

The record shows that LeJeune was granted an opportunity for her attorney to submit a subpoena which was issued on December 13, 2021, and directed that Jubilee send her medical records dated March 6, 2020, to the present. R. Doc. 11-4, Tr. 284-286. Approximately two months later, LeJeune's representative informed the ALJ that due to COVID-19 and Hurricane Ida, Jubilee was unable to comply with earlier requests for records but that they hoped to send the records the following week which they did not. R. Doc. 11-6, Tr. 439. Ms. Mitchell requested an additional 15 day to submit the records, but they were never forwarded. *Id.*

Now Mitchell complains that the ALJ did not adequately develop the record because he made no effort whatsoever to enforce the subpoena. However, the record does contain records from Jubilee from 2018 to March 9, 2020. *See* R. Doc. 11-8, Tr. 871-1309. These records indicated that LeJeune had normal psychomotor activity, normal speech, good mood, appropriate affect, logical and coherent thought, process, normal memory, intact critical judgment, true emotional insight, and was alert, oriented, cooperative, and able to resist impulse. R. Doc.11-8.

The only request for evidence directed to Jubilee is dated April 20, 2020. *Id.* at 1285. The medical records indicate that LeJeune was supposed to follow up in two months or in June 2020. *Id.* at 1287. However, the records do not show that she returned in June 2020.

Even if the missing month of treatment was not obtained, LeJeune fails to present evidence that shows the absence of this evidence was detrimental to the case. *Id.* The ALJ found that LeJeune was disabled as of July 20, 2020. R. Doc. 11-2, Tr. 23. The record illustrates that it was fully developed, and Mitchell has not presented and evidence to the contrary. Therefore, the ALJ's opinion is based on substantial evidence

C. **ALJ's Lack of Assessment of LeJeune's Symptoms as reported by her mother.**

Next Mitchell contends that the ALJ failed to consider LeJeune's subjective complaints including chronic pain and anxiety. R. Doc. 12 at 13. Mitchell further contends that the ALJ failed to consider that LeJeune's mental impairments interfered with her ability to sustain attention and caused her to become easily overwhelmed when trying to follow instructions as detailed by her mother. *Id.* Mitchell alleges that the ALJ never addressed any of LeJeune's reported symptoms and limitations arising from her allegedly disabling impairments. *Id.* Mitchell contends that rather than rely upon LeJeune's symptoms, the ALJ relied on meaningless boiler plate to reject all of LeJeune's limitations before July 20, 2020. *Id.* at. 14.

The Commissioner contends that the ALJ properly assessed LeJeune's and Ms. Mitchell's statements. R. Doc. 13. The Commissioner contends that the ALJ determined that he found their statements not entirely consistent with the record before July 20, 2020. The ALJ noted that according to Ms. Mitchell, the claimant's mother, the claimant passed away at 52 years of age. R. Doc. 11-2, Tr. 21. The ALJ noted the mother's account that cystitis caused the claimant to sit on the commode for long periods due to pain. *Id.*

He noted that pressure prevented LeJeune from sitting or standing for long periods due to pain. *Id.* He noted further that Mitchell described her daughter as overmedicated in connection with her treatment for neck and back issues that she could not stand and had to stop working. *Id.*

11

According to her mom, she could not even carry trays in the restaurant. *Id.* The ALJ noted Mitchell's description of her daughter as "like a zombie," her reporting of LeJeune's complaints of numbness tingling in her hands, and that she dropped things and had seizures. *Id.* He noted that LeJeune would, according to her mother's account, stay in her room and indicated that she felt like everything was closing in on her. *Id.*

The ALJ continued detailing the testimony of Mitchell, who pointed out that her daughter experienced panic attacks, had suicidal ideation, memory, focus problems, and seizures. *Id.* The ALJ concluded that based upon his review of the total record, the objective evidence could not fully be reconciled with the allegations of symptoms and limitations because her own sources do not support the limitations that preclude all work activity. *Id.* at 22.

While the ALJ did not reference specifically the functional report, he indicated that he read everything in the record, which would have included the functional report. For example, the ALJ noted that LeJeune was able to perform activities of daily living independently. R. Doc. 11-2, Tr. 22. LeJeune, in the functional activity report, indicated that she is able to shop, manage money, pay bills, handle a savings and checking account, and drive. R. Doc. 11-6, Tr. 331-332.

The ALJ further considered LeJeune's statement where she denied substance abuse. R. Doc. 11-2, Tr. 21. In his review of the records, however, he noted that the drug screening revealed cocaine use. *See* R. Doc. 11-6, Tr. 451-452, 1823-1824.

The ALJ not only considered the testimony of Ms. Mitchell, LeJeune's mother, but he determined that despite her testimony the evidence did not support the gravity of illness as she described. *Id.* at 23. Further, while Ms. Mitchell suggests that the ALJ did not review the functional report her daughter completed, the opinion suggests otherwise. The Court finds that the ALJ properly considered the testimony of Ms. Mitchell as well as the claimant's statements

contained in the record, which includes the functional report.

### D. ALJ's consideration of LeJeune's Interstitial Cystitis and Functional Limitations

Mitchell contends that since the ALJ himself concluded that LeJeune experienced severe interstitial cystitis ("IC"), as a matter of law, the impairment significantly limited her ability to perform basic work activities. R. Doc. 12 at 17. Mitchell also contends that there was nothing in the ALJ's decision that clearly accommodated LeJeune's IC, nor did the ALJ explain how he accommodated this conclusively severe impairment such that his opinion is not based upon substantial evidence. *Id.*

The Commissioner contends that the ALJ found that LeJeune's chronic interstitial cystitis with frequency and urgency incontinence was severe but that no additional limitations were required because the condition was controllable.

Social Security Ruling 15-1P ("SSR 15-1P") explains that IC is a complex, chronic bladder disorder that can be the basis for a finding of disability when accompanied by appropriate symptoms, signs, and laboratory findings. SSR 15-1P, 2015 WL 1292257, at *4 (March 18, 2015). It is characterized by "urinary frequency, urinary urgency, and pelvic pain" and "may co-occur with fibromyalgia, . . . [and] vulvodynia . . . ." *Id.* at *3. Although symptoms vary in both kind and intensity, "[t]he three most common symptoms are an urgent need to urinate (urgency), a frequent need to urinate (frequency), and pain in the bladder and surrounding pelvic region." *Id.* at *2. Treatment is directed toward symptom relief, and the response to treatment varies. *Id.*

Many people with IC have chronic pelvic pain, which can affect the ability to focus and sustain attention on the task at hand. *Id.* Nocturia may disrupt sleeping patterns and lead to

drowsiness and lack of mental clarity during the day. *Id.* at *9. Urinary frequency can necessitate trips to the bathroom as often as every 10 to 15 minutes, day and night. *Id.* Consequently, some individuals with IC essentially may confine themselves to their homes. *Id.*

The ALJ noted that Ms. Mitchell testified about her daughter's cystitis and its impact on her ability to function. For example, the ALJ indicated that according to her mother, LeJeune had to sit on the commode for long times, that pressure prevented her from sitting or standing for long periods. R. Doc. 11-2, Tr. 21. He noted her mother's testimony that LeJeune would have to be forced out of her room and did not want to go shopping. *Id.*

The ALJ also noted that the while the record showed a history of pelvic floor dysfunction with frequent urgency syndrome and pain, by November 2019, the claimant was doing well. R. Doc. 11-2, Tr. 22. The ALJ noted that LeJeune reported improvement in pelvic pain with CT guided injection and medications, and no urinary incontinence was reported. *Id.* at 22.

The record supports the ALJ's conclusion that LeJeune had not reported any loss of urinary control from 2017 to 2019. *See* Tr. 741, 751, 770, 2054, 2058, 2079. Contrary to Mitchell's suggestion, the ALJ referenced Exhibit 5F as support for his conclusion. R. Doc. 11-2, Tr. 22. The record evidence does not support any additional limitations in the RFC due to interstitial cystitis. The Court finds that the ALJ fully considered LeJeune's interstitial cystitis such that the ALJ's decision is based upon substantial evidence.

## IV. <u>Recommendation</u>

**IT IS RECOMMENDED** that the decision of the Administrative Law Judge be **AFFIRMED** as it is based on substantial evidence, pursuant to Title 42 U.S.C. § 405(g); and that the Plaintiff's, Sandra Mitchell OBO, Shelley B. LeJeune, claims for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 and Supplemental Security

Income be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[1]

New Orleans, Louisiana, this 13th day of October 2023.

*[signature]*

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.